## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL ETZLE, et al.,

                    Plaintiffs,

            v.

RAYMOND GLOVA, et al.,

                    Defendants.

CIVIL ACTION NO. 3:22-CV-00139

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiffs Daniel Etzle ("Mr. Etzle") and Lisa Etzle ("Mrs. Etzle") (collectively, "Plaintiffs") commenced this action on January 26, 2022, asserting violations of their federal civil rights under 42 U.S.C. § 1983 and state law claims against Defendants Officer Raymond Glova, ("Officer Glova") and Officer Nicholas Riebel, ("Officer Riebel"), (collectively, "Defendants"). (Doc. 1). Pending before the Court is a motion to dismiss Plaintiffs' complaint and a motion to compel non-party subpoena filed by Officer Riebel. (Doc. 8; Doc. 24). On July 8, 2022, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 21). For the following reasons, Officer Riebel's motions will be **DENIED.**

## I.      BACKGROUND

Plaintiffs commenced this action with the filing of the complaint on January 26, 2022, asserting Fourth Amendment claims for excessive force, failure to intervene, violation of due process rights, false arrest and false imprisonment, and malicious prosecution; conspiracy to commit malicious prosecution; and state law claims for assault and battery. (Doc. 1, at 7-14).

The events giving rise to this action follows. On January 28, 2020, Plaintiffs were

called to Vision Quest in Plymouth, Pennsylvania where their daughter, Lindsey Rydzfski ("Rydzfski"), was attending a monitored visit with her children. (Doc. 1, ¶¶ 8-9). During her monitored visit, an argument started between Rydzfski and her children's foster family. (Doc. 1, ¶ 9). Rydzfski called Plaintiffs for assistance. (Doc. 1, ¶ 9). Mrs. Etzle called 911 to report an incident and request police presence at the scene. (Doc. 1, ¶ 10). Vision Quest security guard, identified as Morgan Lewis ("Lewis"), also called 911 and requested police assistance. (Doc. 1, ¶¶11).

Officer Glova and Officer Reibel arrived on scene. (Doc. 1, ¶ 12). Lewis asked Defendants to remove Rydzfski from the Vision Quest building. (Doc. 1, ¶ 12). Plaintiffs arrived and attempted to rectify the situation and calm down Rydzfski and the foster parents. (Doc. 1, ¶ 13). Mrs. Etzle worked with and knew the foster parents, so she tried to intervene. (Doc. 1, ¶ 14). Officer Reibel began to scream at Mrs. Etzle. (Doc. 1, ¶ 15). Officer Reibel then grabbed Mrs. Etzle, pushed her into a wall, down the hallway and into the door. (Doc. 1, ¶ 16). Officer Reibel then pushed Mrs. Etzle outside. (Doc. 1, ¶ 17). Mr. Etzle then asked Officer Reibel why he needed to assault his wife. (Doc. 1, ¶ 18). Outside, Officer Reibel grabbed Mr. Etzle around the neck, causing him to fall through the door and onto the ground, where Officer Reibel was on top of him and choking him. (Doc. 1, ¶ 19-21). Mrs. Etzle was screaming at Officer Reibel to get off Mr. Etzle because he had just had surgery. (Doc. 1, ¶ 22). Officer Reibel placed his knee on Mr. Etzle's back and handcuffed him. (Doc. 1, ¶ 24). Once Mr. Etzle was handcuffed, Mrs. Etzle continued to scream at Officer Reibel to get off Mr. Etzle. (Doc. 1, ¶ 25). Officer Reibel slammed Mrs. Etzle to the ground and she hit her arm and head on the concrete, which caused her to bleed from her arm and incur a head injury. (Doc. 1, ¶¶ 26, 29). At this point, Officer Glova walked out of the inside of the Vision

Quest building and took Mrs. Etzle into custody. (Doc. 1, ¶ 27). Defendants screamed at Mrs. Etzle. (Doc. 1, ¶ 28). Officer Glova did not intervene during the events. (Doc. 1, ¶ 30). Mrs. Etzle urinated her pants, to which Officer Riebel laughed and made comments. (Doc. 1, ¶ 31).

Plaintiffs were transported to the Plymouth Borough Police Department, where they were detained for three hours to wait for a Magisterial District Judge. (Doc. 1, ¶¶ 32-33). Officer Glova charged Mr. Etzle with Resisting Arrest and Disorderly Conduct. (Doc. 1, ¶¶ 34-35). Officer Glova charged Mrs. Etzle with Obstructing the Administration of Law or Other Government Functions, Resisting Arrest, and Disorderly Conduct. (Doc. 1, ¶¶ 34, 37). Officer Riebel did not intervene to prevent Officer Glova from charging Plaintiffs. (Doc. 1, ¶ 39). Plaintiffs were acquitted of the charges at trial on April 29, 2021. (Doc. 1, ¶ 41); *see Commonwealth v. Etzle*, CP-40-CR-545-2020; *Commonwealth v. Etzle*, CP-40-CR-546-2020.

On March 28, 2022, Defendant Officer Riebel filed a partial motion to dismiss counts seven, eight, nine, ten, eleven, and twelve of Plaintiffs' complaint pursuant to Rule12(b)(6). (Doc. 8). On April 11, 2022, Officer Riebel filed a brief in support of the partial motion to dismiss. (Doc. 9). On April 11, 2022, Plaintiffs filed a brief in opposition, and on May 4, 2022, Officer Riebel filed a reply brief. (Doc. 10; Doc. 14). On September 9, 2022, Officer Riebel filed a motion to compel non-party, the Luzerne County Clerk of Courts, to produce subpoenaed documents. (Doc. 24).

The motions have been fully briefed and are ripe for disposition. (Doc. 8; Doc. 9; Doc. 10; Doc. 14; Doc. 24).

## II.   LEGAL STANDARDS

### A.   MOTION TO DISMISS

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated*

*Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d 336 at 347.

B. SECTION 1983

Plaintiffs assert federal civil rights claims pursuant to 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

> 42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a 42 U.S.C. § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

**III.   DISCUSSION**

A. MOTION TO COMPEL SUBPOENA

In the motion to compel, Officer Riebel states that on April 4, 2022, he issued a subpoena to non-party, the Luzerne County Clerk of Courts, pursuant to Fed. R. Civ. P 45, requesting a copy of the Court's file in the underlying criminal matter involving Plaintiffs' arrest. (Doc. 24, ¶ 11; Doc. 24-4, at 2-7). On April 18, 2022, the Luzerne County Clerk of Courts provided a certified response indicating that there are "no records found" in the underlying cases. (Doc. 24, ¶ 12; Doc. 24-5, at 2-5). However, Officer Riebel asserts he has personal knowledge that the Luzerne County Clerk of Courts maintains records in this matter as he attended and testified at the trial in this matter, and Plaintiffs' allegations in the complaint confirm the same. (Doc. 24, ¶ 13). Officer Riebel claims he has attempted to resolve this matter in good faith with the counsel for the Luzerne County Clerk of Courts but has been unsuccessful. (Doc. 24, ¶ 17). Officer Riebel now moves for the Court's intervention.

The Luzerne County Clerk of Courts is not a party to this action. Rule 45 of the Federal Rules of Civil Procedure sets forth the requirements for discovery directed to individuals and entities that are not parties to the underlying suit through the use of a subpoena. Production of documents from a nonparty for discovery purposes can be compelled "only by a subpoena *duces tecum* issued under Rule 45(d)(1)." *Badman v. Stark*, 139 F.R.D. 601, 603 (M.D. Pa. Aug.

2, 1991) (quoting *United States v. Allen*, 578 F. Supp. 468, 472 (W.D. Wis. 1982)). "A subpoena under Rule 45 'must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).'" *Riemensnyder v. Barr*, No. 3:20-CV-109, 2021 WL 1320826, at *2 (M.D. Pa. Apr. 8, 2021) (quoting *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013)). Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands. Fed. R. Civ. P. 45(d). In this regard, it is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. *R.J. Reynolds Tobacco v. Philip Morris Inc.*, 29 F. App'x 880, 881 (3d Cir. 2002). This far-reaching discretion extends to decisions regarding how to enforce compliance with subpoenas, where "[i]t is well-established that the scope and conduct of discovery are within the sound discretion of the trial court." *Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 552 (E.D. Pa. 2010) (quoting *Guinan v. A.I. duPont Hosp. for Children*, No. 08-228, 2008 WL 938874, at *1 (E.D. Pa. Apr. 7, 2008); *Marroquin–Manriquez v. INS*, 699 F.2d 129, 134 (3d Cir. 1983)) (internal quotations omitted); *see also Gallas v. Supreme Court of Pa.,* 211 F.3d 760, 778 (3d Cir.2000) (explaining that a trial court's discovery ruling will only be disturbed if "the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible").

Federal Rule of Civil Procedure 26 establishes a fairly liberal discovery policy. The Federal Rules of Civil Procedure allow discovery on any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). However, "discovery, like all matters of procedure, has ultimate and necessary

boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351–52, (1978); *see also Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir.1999).

> In ruling upon objections to a subpoena, 'this court is required to apply the balancing standards—relevance, need, confidentiality, and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit.' The court's evaluation of a motion to quash or enforce a Rule 45 subpoena is also governed by shifting burdens of proof and persuasion.

> *Riemensnyder,* 2021 WL 1320826, at *2 (quoting *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002)).

Accordingly, "the subpoenaing party bears the initial burden to establish the relevance of the material sought, and then the burden shifts to the subpoenaed party to demonstrate that the subpoena seeks privileged or otherwise protected material under Rule 45." *L.W. v. Lackawanna Cty., Pa.*, No. 3:14-CV-1610, 2015 WL 1499865, at *1 (M.D. Pa. Apr. 1, 2015) (citing *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014)).

"If the subpoenaed nonparty claims the protections under Rule 45(d)(3)(B) or asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A), it must show that disclosure will cause it a "clearly defined and serious injury." *City of St. Petersburg v. Total Containment, Inc.,* Case No. 06–CV–20953, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008) (undue burden under Rule 45(d)(3)(A)); *In re Mushroom Direct Purchaser Antitrust Litig.,* Case No. 06–cv–0620, 2012 WL 298480, at *5 (E.D. Pa. Jan. 31, 2012) (disclosure of trade secrets under Rule 45(d)(3)(b)(i)). First, the subpoenaing party must show "a substantial need for the testimony or material that cannot be otherwise met without undue hardship," Fed. R. Civ. P. 45(d)(3)(C)(i), and demonstrate "that the subpoenaed [nonparty] will be reasonably compensated," *id.* 45(d)(3)(C)(ii). If the subpoenaing party makes this showing of substantial need, the Court conducts a balancing test that weighs "(1) the relevance, (2) need, (3) and

confidentiality of the requested materials, as well as (4) the harm that compliance would cause the subpoenaed nonparty." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at 239 (citing *Mannington Mills, Inc.,* 206 F.R.D. 525 at 529 ("[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit.")). A court should be "particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at 239 (quoting *Fears v. Wilhelmina Model Agency, Inc.,* Case No. 02–CV–4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004)).

Here, Officer Riebel seeks to compel a non-party to comply with the Rule 45 subpoena in this matter. (Doc. 24). Officer Riebel avers that the Luzerne County Clerk of Courts is unable to comply with the above-referenced subpoena because the underlying criminal file has been sealed pursuant to the provisions of the Pennsylvania Criminal History Record Information Act ("CHRIA"), 18 Pa. C.S.A. § 9101 *et seq*. (Doc. 24, ¶¶ 14).

"All evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Common law governs a claim of privilege unless the United States Constitution, a federal statute, or a rule prescribed by the Supreme Court provides otherwise. Fed. R. Evid. 501. However, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Here, because this is a civil action, Pennsylvania law governs the privilege claim. (Doc. 1). "Thus, federal courts are to apply federal law of privilege to all elements of claims except those '[for] which [s]tate law supplies the rule of decision.'" *Pearson*, 211 F.3d at 66. Giving due consideration to comity, the federal court's ultimate task

is to determine whether privileges associated with state statutes and the confidentiality they seek to protect are cognizable under Federal Rule of Evidence 501. *See Pearson*, 211 F.3d at 68-69 (explaining that even if the Pennsylvania courts have described a statute providing for a duty of confidentiality as creating an evidentiary privilege "what these opinions have characterized as 'privileges' are not necessarily privileges within the meaning of Rule 501"). Because privileges are disfavored, federal courts have generally declined to grant requests for new privileges. *See Pearson*, 211 F.3d 57 at 68-69.

"CHRIA prohibits criminal justice agencies from disseminating investigative information 'to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.'" *Shetayh v. State Farm Fire & Cas. Co.*, No. 5:20-CV-00693, 2020 WL 6817325, at *3 (E.D. Pa. Nov. 20, 2020) (quoting 18 Pa. C.S. § 9101(C)(4); *Piazza v. Young*, No. 4:19-CV-00180, 2020 WL 6544979, at *4 (M.D. Pa. Nov. 6, 2020)). Specifically, 18 Pa. Cons. Stat. § 9122.2 provides:"'[c]riminal history record information pertaining to charges which resulted in a final disposition other than a conviction' may be subject to 'limited access.'" 18 Pa.C.S. § 9122.2. In other words, public dockets show the disposition of charges which result in a conviction, but courts cannot rely on them to show whether prosecutors ever brought other charges that did not result in a conviction.

Regarding the question of whether CHRIA creates a privilege, this argument has already been addressed and rejected by this Court and various others in both diversity jurisdiction and federal question jurisdiction cases. *See, e.g.*, *Piazza*, 2020 WL 6544979;

*Zielinski v. Mega Manufacturing, Inc.*, 2019 WL 6353203 (E.D. Pa. Nov. 26, 2019) (concluding ; *Shetayh,* 2020 WL 6817325; *Carusone v. Kane*, No. 1:16-CV-1944, 2017 WL 5900429, at *2 (M.D. Pa. Nov. 30, 2017). In recent years, the Superior Court of Pennsylvania also turned down the opportunity to evaluate whether CHRIA creates a privilege or merely a duty of confidentiality. *See In re Subpoenas in Case of Mielcarz v. Pietzsch*, 2018 WL 3113916, at *6 (Pa. Super. Ct. June 22, 2018) ("We explicitly decline to opine on whether CHRIA's nondisclosure requirement is a privilege or whether it merely ensures confidentiality of information."). In *Mielcarz*, the Pennsylvania Superior Court "explicitly decline[d] to opine on whether CHRIA's nondisclosure requirement is a privilege or whether it merely ensures confidentiality of information." 193 A.3d 1094, 1094 n.9 (Pa. Super. Ct. 2018). The Court previously concluded that "CHRIA does not compel a federal court to recognize a blanket privilege against the discovery of police reports containing investigative information or complaints against third persons." *Carusone,* WL 5900429, at *2 (quoting *Benedict v. McMahon*, 315 F.R.D. 447, 452 (E.D. Pa. 2016) (citing cases)). In this case, the Court, consistent with the cases, concludes that CHRIA does not create a blanket privilege. *See Shetayh*, 2020 WL 6817325, at *3; *see also Pearson*, 211 F.3d at 67 ("Statutory provisions providing for duties of confidentiality do not automatically imply the creation of evidentiary privileges binding on courts."). Accordingly, the material subpoenaed by Officer Riebel is discoverable under Rule 26.

"Even where the Court declines to recognize state privileges in federal court under Rule 501, it does not follow that the documents requested are necessarily discoverable." *Griffin-El v. Beard*, No. 06-2719, 2009 WL 1606891, at *15 (E.D. Pa. June 8, 2009). Rule 26 requires not only that the material not be "privileged," but also requires that the information be "relevant to any party's claim or defense and proportional to the needs of the case." Fed.

R. Civ. P. 26(b)(1). Further, Rule 26 specifically allows the court, after considering numerous factors, to limit the scope of discovery. Rule 45 allows a court to quash a subpoena for material that might otherwise fall under the broad definition of discoverable material. Specifically, Rule 45 provides that the court "must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter . . . ." *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

Officer Riebel claims the requested information is necessary to "understand the timing and scope of the Court's decision, as well as the rationale behind the trial court's acquittal," and "to obtain the sworn trial testimony from the Plaintiffs, Defendants and other eyewitnesses." (Doc. 24, ¶ 25). Moreover, Officer Riebel avers "[n]ot only is this information relevant, but also that there is no other means by which to obtain this information." (Doc. 24, ¶ 26). In support of this assertion, Officer Riebel attaches the underlying criminal complaints filed by Plaintiffs to the motion to compel. (Doc. 24-2; Doc. 24-3).

Here, Officer's Riebel's subpoena seeks investigative information that is protected by CHRIA. Although CHRIA does not create a blanket privilege to remove the material from the scope of discoverable matter under Federal Rule 26, the confidentiality duties imposed by CHRIA make the material "protected matter" that may be quashed pursuant to Federal Rule 45. By prohibiting the disclosure of the material, this Court gives due consideration to comity, satisfies the concerns of Pennsylvania General Assembly has about maintaining the confidentiality of documents that relate to a criminal investigation, and enforces the text of Rule 45. *Shetayh*, 2020 WL 6817325, at *4. (holding investigative information "confidential" such that it is "protected matter" under Rule 45); *Piazza*, 2020 WL 6544979, at *3 (holding that the duty of confidentiality in CHRIA "leads to the conclusion that any investigative materials at issue constitute 'other protected matter' under FRCP 45, such that this Court

must quash or modify the subpoena").

Accordingly, the Court will deny Officer Riebel's motion to compel (Doc. 24).[1]

B. MOTION TO DISMISS

In the partial motion to dismiss, Officer Riebel moves to dismiss counts seven, eight, nine, ten, eleven, and twelve of Plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim, arguing Plaintiffs have failed to plead facts demonstrating claims of false arrest and false imprisonment, malicious prosecution, and conspiracy to commit malicious prosecution. (Doc. 8; Doc. 9). Officer Riebel contends Plaintiffs' complaint contains "threadbare, conclusory allegations" that are not sufficient to state a plausible claim for relief. (Doc. 9, at 11-12). In opposition, Plaintiffs argue the complaint pleads facts sufficient to establish the false arrest/false imprisonment, malicious prosecution, and conspiracy claims for relief. (Doc. 10).

**1. False Arrest and False Imprisonment Claims**

First, Officer Riebel moves to partially dismiss the complaint for failure to state a claim for false arrest and imprisonment. (Doc. 8; Doc. 9, at 9-12). In counts seven and nine of the complaint, Plaintiffs assert claims for false arrest and false imprisonment claims against Defendants. (Doc. 1, at 11-14). Specifically, Plaintiffs allege "Defendants, without any probable cause, detained [Plaintiffs] unlawfully thus violating [Plaintiffs'] rights and causing [them] harm." (Doc. 1, ¶¶ 67, 70). Furthermore, Plaintiffs claim "Defendants caused criminal proceedings to be initiated against [Plaintiffs], resulting in [Plaintiffs'] arrest and prosecution,

---

[1] This ruling is without prejudice to the parties revisiting this motion at a later date should further information or circumstances become available that would be relevant to reconsideration of this motion.

and conspired with each other to do so." (Doc. 1, ¶¶ 73, 81). Plaintiffs state that Defendants' conduct "was a deprivation, under color of state law, of rights guaranteed to [Plaintiffs] under the Fourth and Fourteenth Amendments to the United States Constitution." (Doc. 1, ¶¶ 78, 86). Plaintiffs contend as a result of Defendants' conduct, they suffered substantial injuries and damages. (Doc. 1, ¶¶ 68, 71, 79, 87).

In the motion to dismiss, Officer Riebel asserts Plaintiffs must allege lack of probable cause when attempting to set forth claims for false arrest and false imprisonment. (Doc. 9, at 10). Officer Riebel argues that the allegation that Officer Riebel handcuffed Mr. Etzle with his knee in Mr. Etzle's back does not state a claim for false arrest and false imprisonment. (Doc. 9, at 10-11). Similarly, Officer Riebel avers that Mrs. Etzel's claims must fail because Mrs. Etzel fails to allege that Officer Riebel took Mrs. Etzle into custody prior to charging her with crimes for the January 28, 2020, incident and arrest. (Doc. 9, at 12). Second, Officer Riebel states that Plaintiffs fail to allege that Officer Riebel was the arresting officer for the criminal charges against Mr. Etzle on January 28, 2020, and therefore, Plaintiffs' claims must fail. (Doc. 9, at 11). In opposition, Plaintiffs contend that Defendants' seizure of them was unlawful and violated the Fourth and Fourteenth Amendment. (Doc. 10, at 11-13). Plaintiffs argue that they have stated federal claims against Officer Riebel and that Plaintiffs' false arrest/false imprisonment claims for relief need not allege that Officer Riebel was the affiant officer on the criminal complaints charging Plaintiffs with crimes. (Doc. 10, at 11-13).

In *Heck v. Humphrey*, the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal,

expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486-87, 490 (1994) (footnote omitted). Plaintiffs state all of the criminal proceedings related to their unlawful arrest and imprisonment were terminated in favor of Plaintiffs. (Doc. 1, ¶¶ 75, 83). Accordingly, Plaintiffs' false arrest and false imprisonment claims are not *Heck* barred. *See Heck*, 512 U.S. at 486-87, 490.

Here, Plaintiffs have stated a plausible claim for false arrest and false imprisonment. Under the Fourth Amendment to the United States Constitution, an arrest made without probable cause is a constitutional violation that may be redressed under § 1983. However, to make out a false arrest claim, a plaintiff must demonstrate: (1) that there was an arrest; and (2) that the arrest was made in the absence of probable cause. *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause to support an arrest does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). Rather, probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). In making a probable cause determination, a police officer is authorized to weigh the evidence and make credibility determinations, even if those decisions later prove incorrect. *Eckman v. Lancaster City*, 742 F. Supp. 2d 638, 650 (E.D. Pa. 2010), *aff'd*, 515 F. App'x 93 (3d Cir. 2013), and *aff'd*, 529 F. App'x 185 (3d Cir. 2013) (citing *Wright v. City of Phila.*, 409 F.3d

595, 603 (3d Cir. 2005)).

The Third Circuit requires a two-step inquiry to determine the sufficiency of the facts alleged in a complaint: First, the factual and legal elements of a claim should be separated and the district court must accept all the complaint's well-pleaded facts as true but may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler,* 578 F.3d at 210-11. When viewing the facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have alleged facts to show or suggest that the basis for their arrest is disputed or did not exist, as required for a false arrest and false imprisonment claim. *Kokinda v. Breinier,* 557 F. Supp. 2d 582, 592 (M.D. Pa. 2008) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).

Here, Plaintiffs allege that there was no probable cause to charge them. (Doc. 1, ¶¶ 36, 38). The facts regarding the circumstances of Mr. Etzel's arrest are: Officer Riebel "jumped up at Mr. Etzle and grabbed him around his neck." (Doc. 1, ¶ 19); "Officer Riebel was now on top of Mr. Etzel and was choking him." (Doc. 1, ¶ 21); "Officer Riebel had his knee in Mr. Etzle's back and was handcuffing him." (Doc. ¶ 24); Officer Riebel was extremely violent and there was no resistance from Mr. Etzle." (Doc. 1, ¶ 24); and "Officers Riebel and Gladova took the Etzles to the Plymouth Borough Police Department and kept them there for hours . . . . " (Doc. 1, ¶ 32). (Doc. 10, at 11-12). Similarly, Mrs. Etzle alleges "Officer Riebel grabbed Mrs. Etzel and slammed her into the wall in the hallway and began pushing her down the hallway to the door." (Doc. 1, ¶ 16); "Officer Riebel pushed Mrs. Etzel into the door, using her body to open the door and pushed her outside." (Doc. 1, ¶ 17); "Officer Riebel

slammed Mrs. Etzle to the ground and she hit her head and arm off of the concrete." (Doc. 1, ¶ 26); and "Officers Riebel and Glova took the Etzles to the Plymouth Borough Police Department and kept them there for hours . . . ." (Doc. 1, ¶ 32). (Doc. 10, at 11-12). At this stage, Plaintiffs have at least alleged that the arresting officers had no probable cause or lawful reason to seize them, yet there did so anyway. (Doc. 1, ¶¶ 36, 38). As the Court has no other information regarding Defendants' probable cause for the Plaintiffs' arrest, assuming the existence of probable cause would require the Court to assume facts not in the record and draw impermissible inferences in Defendants' favor. *Cruz v. City of Pottsville*, No. 3:21-CV-00283, 2022 WL 2733207, at *7 (M.D. Pa. May 19, 2022), *report and recommendation adopted*, No. 3:21-CV-283, 2022 WL 2132844 (M.D. Pa. June 14, 2022) (citing *Brigman v. Schaum,* No. 1:20-CV-1549, 2021 WL 3821070, at *7 (M.D. Pa. July 27, 2021), *report and recommendation adopted*, No. 1:20-CV-1549, 2021 WL 3862023 (M.D. Pa. Aug. 26, 2021) (concluding plaintiff stated a claim for false arrest/ false imprisonment where complaint alleged that plaintiff was unlawfully detained, imprisoned, kidnapped, and arrested without probable cause and imprisoned).

Accordingly, as it relates to Plaintiffs' false arrest claim under the Fourth Amendment, the motion to dismiss will be denied. *Cruz,* 2022 WL 2733207, at *7 (denying defendants' motion to dismiss plaintiff's false arrest / false imprisonment claim where complaint alleged that police officers had "no probable cause to believe plaintiff had committed a crime" and that there "was no lawful reason to stop and arrest him").

### 2. Malicious Prosecution Claims

In the complaint, Plaintiffs also assert claims against Defendants for malicious prosecution in violation of the Fourth Amendment. (Doc. 1, at 12-13). In counts eleven and

twelve of the complaint, Plaintiffs allege "Defendants caused criminal proceedings to be initiated against [Plaintiffs] on January 28, 2020, resulting in [Plaintiffs'] arrest and prosecution, and conspired with each other to do so." (Doc. 1, ¶¶ 89, 95). Plaintiffs submit "Defendants cause such criminal proceedings to be initiated without probable cause," and "with malice." (Doc. 1, ¶¶ 90-91, 96-97). Plaintiffs also state the criminal proceedings were terminated in favor of Plaintiffs and that "Defendants' initiation and prosecution of the criminal charges against [Plaintiffs] proximately cause damage to [Plaintiffs]." (Doc. 1, ¶¶ 92-93, 98-99).

Officer Riebel moves to dismiss Plaintiff's malicious prosecution claims, arguing that these claims fail because "Plaintiffs' allegations clearly show that Officer Riebel did *not* initiate the criminal proceedings for which [Plaintiffs] were charged." (Doc. 9, at 13) (emphasis in original). Specifically, Officer Riebel asserts Officer Glova, not Officer Riebel, initiated the criminal proceedings by virtue of providing information to the prosecution and that Plaintiffs fail to, and cannot, allege "that Officer Riebel furnished false information to, or concealed material information from prosecuting authorities." (Doc. 9, at 14-15). In opposition, Plaintiffs state:

> While it is true that Glova was the affiant, this does not let Riebel off the hook. Riebel is liable for malicious prosecution both because he failed to intervene in Glova's malicious charging of [P]laintiffs with crimes (in order to justify Riebel's use of unreasonable force, which is not the subject of Riebel's motion), and also because Riebel and Glova conspired to maliciously prosecute the [P]laintiffs.

(Doc. 10, at 14).

To prevail on this claim, Plaintiffs must allege the following: "(1) the defendant initiated a criminal proceeding, (2) the criminal proceeding ended in [plaintiff's] favor, (3) the defendant initiated the proceeding without probable cause, (4) the defendant acted

maliciously or for a purpose other than bringing the plaintiff to justice and, (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr,* 477 F.3d 75, 82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir.2003)). To establish a malicious prosecution claim, there must be an absence of probable cause to arrest. *See Unterberg v. Magluilo*, No. CV 3:20-410, 2021 WL 1123329, at *4 (M.D. Pa. Mar. 24, 2021) ("whether characterized as a false arrest, or couched in terms of malicious prosecution, proof that probable cause was lacking is essential to any § 1983 claim arising out of the arrest and prosecution of an individual.") (citing *Price v. Zirpoli*, 2016 WL 3876442, *5 (M.D. Pa. Jan. 20, 2016), *adopted by* 2016 WL 3876646 (M.D. Pa. July 15, 2016); *Sheedy v. City of Philadelphia,* 184 F. App'x 282, 284 (3d Cir. 2006) (holding that probable cause existed to arrest wife for theft under Pennsylvania law, precluding claims for malicious prosecution and false imprisonment); *see also Kelley v. Gen. Teamsters, Local Union 249,* 544 A.2d 940, 941 (1988).

Here, Plaintiffs have stated a plausible claim for malicious prosecution. Plaintiffs have alleged that Defendants initiated a criminal proceeding that ended in their favor, Plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding, and that Defendants initiated the criminal proceeding without probable cause. (Doc. 1, ¶¶ 32-38, 41). Regarding the fifth element, malice may be inferred from the absence of probable cause. *Carson v. Aurand*, No. 1:17-CV-01263, 2019 WL 2539447, at *8 (M.D. Pa. June 20, 2019) (*Hugee v. Pennsylvania R. Co.*, 101 A.2d 740, 743 (1954)). Thus, Plaintiffs have stated a claim for malicious prosecution. *Barasky v. Dent*, No. 4:21-CV-02041, 2022 WL 14915557, at *6 (M.D. Pa. Oct. 25, 2022) (complaint stated malicious prosecution claim where complaint alleged detective acted without probable cause when filing a criminal

complaint against plaintiff and plaintiff suffered a deprivation of liberty by being incarcerated).

Accordingly, as it relates to Plaintiffs' malicious prosecution claims under the Fourth Amendment, the motion to dismiss will be denied.

### 3. Count 11&12: Conspiracy to Commit Malicious Prosecution

In counts eleven and twelve of the complaint, Plaintiffs assert claims against Defendants for conspiracy to commit malicious prosecution, stating "Defendants caused criminal proceedings to be initiated against [Plaintiffs] on January 28, 2020, resulting in [Plaintiffs'] arrest and prosecution, and conspired with each other to do so." (Doc. 1, ¶¶ 89, 95).

Officer Riebel moves to dismiss counts eleven and twelve on the grounds that Plaintiffs have failed to plead allegations to support a conspiracy claim. (Doc. 9, at 17-18). Specifically, Officer Riebel argues Plaintiffs fail "to plead with particularity the period, object of certain actions taken by Officer Riebel to achieve the unspecified conspiracy." (Doc. 9, at 17). In opposition, Plaintiffs contend that there is no particularity requirement for conspiracy or for civil rights cases and that the complaint contains facts indicating agreement between Defendants to maliciously prosecute Plaintiffs. (Doc. 10, at 15-17).

To prove a conspiracy under Section 1983, a plaintiff must demonstrate an agreement of two or more conspirators to deprive the plaintiff of a constitutional right under color of law. *See Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds*; *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). A plaintiff must "make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged

chain of events." *Molitor v. City of Scranton*, No. CV 3:20-1266, 2021 WL 3884463, at *8 (M.D. Pa. Aug. 31, 2021) (citing *Quintal v. Volk*, 2000 WL 1367948, at *2 (E.D. Pa. Sept. 21, 2000); *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999). It is recognized that a plaintiff is not, however, required to produce direct evidence of a conspiracy. *Molitor*, 2021 WL 3884463, at *8.

Because the Court has found that Plaintiffs' Fourth Amendment malicious prosecution claims survive the motions to dismiss, "it follows that the 42 U.S.C. § 1983 conspiracy claim … may also proceed." *Manivannan v. Cnty. of Ctr., Pennsylvania*, No. 4:21-CV-01359, 2022 WL 18276907, at *15 (M.D. Pa. Aug. 19, 2022), *report and recommendation adopted*, No. CV 4:21-1359, 2023 WL 173141 (M.D. Pa. Jan. 12, 2023) (citing *Thorpe v. City of Philadelphia*, No. 19-cv-5094, 2020 WL 5217396, at *15 (E.D. Pa. Sept. 1, 2020). In this case, Plaintiffs have alleged an underlying constitutional violation against Defendants and have alleged that there was a "combination, agreement, or understanding" between Defendants. (Doc. 1, ¶ 40). Specifically, Plaintiffs allege that Defendants "spoke with each other and conspired to charge the Etzles with crimes without probable cause in order to cover up the use of unreasonable force they had used or were responsible for." (Doc. 1, ¶¶ 40). Thus, the Court agrees with the logic of the Third Circuit that since Plaintiffs' underlying malicious prosecution will proceed, it follows that Plaintiffs' related conspiracy claims proceed as well at this stage. *Manivannan*, 2023 WL 173141, at *9 (concluding plaintiff's § 1983 conspiracy claim could proceed where plaintiff's fabrication-of-evidence and Fourth Amendment malicious prosecution claims survive the motions to dismiss, and plaintiff alleged throughout the complaint that defendants acted in concert with the specific intent to violate Plaintiff's rights).

Accordingly, the Court will deny Defendants' motion to dismiss as it relates to this claim.

IV.    CONCLUSION

Based on the foregoing, Defendants' motions to dismiss (Doc. 8) and Defendants' motion to compel (Doc. 24) is **DENIED**.

An appropriate Order follows.

BY THE COURT:

Dated: March 20, 2023

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**